Good morning, Your Honors. I'd like to reserve two minutes for rebuttal. May it please the Court, my name is Meredith Feiertag. I represent Appellant Kelly Croft. Ms. Croft seeks reversal of the order dismissing her TVPRA claims against the Dolan defendants and the Azoff defendants and asks that this Court remand the case for discovery. The District Court below made some fundamental errors in applying the pleading standard to Ms. Croft's complaint. It failed to take all of the allegations as true. It drew inferences against the pleader and instead adopted Appellee's preferred narrative spin on the facts. I'm going to touch three arguments today. First, that Ms. Croft adequately pleaded a commercial sex act under the TVPRA. Second, I will address Dolan's arguments which were raised on the first time on appeal and therefore should be waived concerning well-pleaded allegations concerning the illicit means element of the TVPRA. And finally, I will turn to the Azoff defendant's liability under theories of beneficiary liability and agency or vicarious liability. You don't have a lot of time and I'm only one of three, but for me the first issue that you raised is not the most critical. Okay. Illicit means is more. Illicit means is more critical. So to start off, the Court only found below that a lack of commercial sex acts was why there was no TVPRA violation. Now on appeal, Dolan spends 40-some-odd pages of his 50-page appellate brief arguing these alternative theories concerning illicit means. But regardless, plaintiff did plead illicit means. She pleaded fraud and coercion that induced her to submit to sexual acts with Dolan. Fraud has a plain meaning under the TVPRA and defendants plainly transported Ms. Croft on fraudulent grounds. They led her to believe that she was being transported for legitimate work for the Eagles and the Azoff entities. In reality- But counsel, with respect, all of the, if you will, accoutrements to provide massage and so on were there. The fact that the Eagles didn't use that doesn't change the fact that the hotel, the transportation, the facilities and so on, those were all provided. It wasn't fraud. You have some other elements you're arguing with respect to Dolan, but with respect to what was promised, isn't that exactly what you got? No, she was hired by the Azoff entities. She received a message from the Azoff entities that she was needed on the tour. Based on the context and all of the circumstances leading up to that request from the Azoff entities, she understood that she was going to work for the Eagles, specifically be a massage therapist just for Glenn Frey, the lead singer of the Eagles. In all- That in and of itself, in your judgment, qualifies as the cause of accident of the TVPRA? Well, that is the fraud that induced her to get into the place where she was then coerced to engage in a sex act. Can we talk about the coercion? Yes. Hold on, because I think Judge Forrest was trying to ask a question before I asked mine. Well, that's where I'm at. I'm not hearing Judge Forrest. Am I alone in that? Is her microphone on? Her microphone is on. Can you turn up your- I don't know where to do that. There you go. Try that. Is that better? There we go. Okay. So I was saying, I think that if you accept the plaintiff's allegations, you probably have enough facts to indicate that she was fraudulently induced to go to L.A. What I'm not seeing, I mean, the standard in the statute is fraudulently induced to engage in a commercial sex act. So I think those are two different things, and that's getting to what Judge Kristen was getting at as well. That's right. So the standard is that the intent is that fraud will be used to induce a commercial sex act. The fraud doesn't actually need to directly cause the commercial sex act. It just has to be the illicit means used, intended to bring about an illicit sex act. But I'm still sort of, what are the facts in the complaint that indicate that fraud or coercion was intended to be used to get her to engage in a commercial sex act, as opposed to get her to L.A.? Well, on the fraud aspect, getting her to L.A. was an essential material part of the commercial sex act. But it wasn't enough. It wasn't enough. So she gets to L.A., and then what? And then the coercion, and that's why the CVPRA allows a sort of combination of illicit means, of fraud and coercion. So we can talk about the coercion a little. But counsel, the classic, we take these cases very seriously. I don't want to give you any, I don't want to suggest to the contrary. But this isn't an underage person. It's not a person who spoke, didn't speak English. It's not a person who didn't have the And that's the problem I have. Why was this such a coercive environment? So that requires taking a look at all of the allegations put together and figuring out a harm that, given all the surrounding circumstances, would compel a reasonable person to continue to perform the commercial sex activity to avoid a potential harm. Here, you have a billionaire owner of Madison Square Garden who's lured this very young woman who's a massage therapist for the Eagles from a small town in Tennessee. He basically says, look, you can come to Madison Square Garden and massage people who come through me. I can fire and hire people on this tour. I can fix problems for you. I can do whatever I want here. That's more than just, you know, I can't leave. That's, if I don't submit to this, there goes my career. There goes everything that I've put my life into. A career before she began the massage for the Eagles tour. Yes, but we do allege that this was her big break. This was the biggest deal in her life. She had never been away from Tennessee. This was a huge deal for her. Working for the Eagles was her big break and Dolan held power over that and he made that perfectly clear. What's your strongest argument? What's your strongest argument that this is sufficient coercion? Is that it? Well, it's all of the Weinstein cases. It's the Schneider case. It's that serious financial loss given the circumstances of who the plaintiff is and who the defendant is can be sufficiently coercive. Some of the Weinstein cases aren't TVPRA cases. So which one in particular are you relying on most heavily? I mean, I think the David v. Weinstein, Noble v. Weinstein, Canosa v. Ziff, all of those cases do focus on just the idea of this is a big break. This is a career making opportunity and this person seems to hold that power over you. So if you refuse to go forward with what they're asking, what are the consequences? Are they serious enough, given who you are and the circumstances you're in, to say I need to move forward? That's the rub. I mean, I share the sentiment that Judge Kristen shared about, like we're not making light of this case at all, but you've got a 27-year-old woman and the theory that you're trying to sell is that a reasonable person would submit to a commercial sex abuse or a commercial sex act to avoid missing out on a big break in a career? That's exactly what the TVPRA contemplates. That's bold. And that's exactly what the language of the TVPRA contemplates. It doesn't require, you know, it's a reasonable person in those circumstances would be sufficiently coercive. She has pled that this was sufficiently coercive for her. Like whether or not that coercion a jury will find was sufficient is a jury question, but she has certainly pleaded that. Well, it's not about coercion for her. This is an objective standard, not a subjective standard. So we have to say just generally it's reasonable that somebody would submit to this to avoid a career harm in this circumstance where you haven't alleged, as Kristen alluded to, that she was in such dire financial situation that she was going to be on the street or something if she missed this opportunity. We don't have any of those kinds of facts. There's certainly one way to plead coercion, but the career prospects laid forth in the Weinstein cases that compelled people to engage in sex with Weinstein was enough under those cases to be coercion. You wanted to reserve two minutes. You're below that. Oh, should we? Do you want to reserve two minutes? Yes, thank you.  Good morning. Thank you so much for giving me the time to be here. I'm Joshua Perry here on behalf of James Dolan and J.D. in the straight shot. I want to go right to the point, Judge Kristen and Judge Forrest, that you made. Nobody is making light of these allegations. I understand the court isn't either. If these allegations were true and they are most assuredly not, then what we would have here are state law California claims, perhaps a Title VII claim. What we do not have is a TVPA case. They've conceded effectively at oral argument that the fraud is not enough, that it comes down to what they allege is economic coercion here. There is no case in which economic coercion defined as depriving the alleged victim of the benefit that she seeks for the commercial sex amounts to coercive fraud that would compel a reasonable person to engage in commercial sex. This is where you get into a bit of trouble with me because this has to be a carefully worded rule of law. There are cases where we've expressed serious concern about a prototypical case where somebody brings a person to the United States, maybe intercepts their passport, right, maybe deprives them of their paychecks so that they don't have the means to escape. So I do think that your briefs overstate your case. Judge, and I think, for instance, one of the cases that you're referring to there is United States v. Dan, which is a court that this – a case that this Court handed down in 2014. And absolutely that's right. Trapping somebody in a place, depriving them of their passport, yes, that is a form of coercion. But as was observed already, that's not what's alleged here. What's alleged here is that it –  I'm only pushing back because I think the rule statement that you advance is too sweeping. I appreciate the Court's point. Let me go directly to the Weinstein cases, which Ms. Croft pointed to as her strongest cases. Those are not economic coercion cases. The illicit means that was alleged in those cases are, number one, the use of physical force, which is not alleged here, and number two, fraud, where promises of career advancement were made and were not kept. That is indeed fraud because it's fraud that goes to the essence of the bargain. I think there were allegations of physical force, but in Florida, and those are not before us. That's exactly right. That is not pled. It was not argued below. It's not argued here. It was not presented by the parties, and it is, as the Court observes, beyond the statute of limitations. That's right. And the Court can look beyond the statute of limitations, of course, for context, but it can't look for an essential element of the tort beyond the statute of limitations. Is that history part of what goes into the course of danger that she found herself in in Los Angeles? Again, it may go to context. It may go to her state of mind. But as was already pointed out, that's not what the statute demands. This is a criminal statute. The question is whether a reasonable person in the same position without history would feel coerced. That's my question. And the answer is on the facts that were pled here, no, absolutely not. What you have here is a 28-year-old self-pled successful masseuse, self-pled had worked at the Bridgestone Arena, self-pled four stars. Bridgestone is actually a bigger arena than the L.A. Forum. Nashville is the fastest-growing metropolis in the country. This is not a small-town girl who was misled and taken advantage of. She's a grown woman, please. And can I interrupt right there? Because I don't know that Judge Smith has had any opportunity to jump in. I'm listening to what my colleague here is saying and very much subscribe. It seems to me that the argument that claim that I'm going to help your career is enough to provide the coercion here would open up a huge Pandora's box of claims that Congress never intended. Would you like to comment on that in terms of, as I understand it, the claim that this is simply enough, that the career promise, whether or not it was ever going to be kept, is enough to constitute the coercion required under the statute? It's absolutely not, and the court is exactly right. If it's true that the mere promise of career advancement is enough, then many of the Title VII quid pro quo cases that come before this court on the regular are in fact sex trafficking cases that Congress punished with 15 years to life in prison. That can't be the rule. Nor can it be true that the mere withholding of hoped-for compensation is enough, or many prostitution cases that come before the state criminal courts would be sex trafficking cases. This is not to minimize the seriousness of Title VII cases. It's not to minimize the seriousness of prostitution cases. Those are serious, but those are separate statutes. So my point on this, and I don't want to belabor it, but there would be circumstances where withholding compensation might be enough if the person didn't have a means to extricate herself from the situation. That's my only point. Is it okay if I speak directly to that? Quickly, because you're out of time. Of course. Thank you, Judge. Sure. Yes, I agree that in conjunction with other factors like being trapped, like inability to extricate, the withholding of something that you were already promised may be enough, but not failing to receive a benefit that you haven't yet gotten. We understand your argument. Thank you. I'm going to stop you, though, because you're over time. Of course. Thank you. I thank you for your patience with our questions. We'll hear from co-counsel. Thank you, Your Honor. Thank you, Your Honor. Anton Metlisky for the aides' affinities. May it please the Court. We joined in Mr. Dolan's arguments. Counsel, would you get a little closer to the mic? I'm sure you were speaking loudly there, but I can't hear you here. Is that better, Your Honor? Much better. Much better. Thank you. I was just saying that we joined in Mr. Dolan's arguments, and if you agree with those, you don't have to listen to anything I'm about to say. But our position is even if the complaint against Mr. Dolan can go forward, the complaint against the Azov entities for beneficiary liability and agency liability cannot. And I'll start with beneficiary liability. To survive a motion to dismiss, they would have to plausibly allege that the Azov entities should have known that Mr. Dolan was sex trafficking the plaintiff. That is, that Mr. Dolan was using force or threats of force or coercion to cause plaintiff to engage in a commercial sex act, which is a crime punishable by at least 15 years in prison. The plaintiff alleges, you know, several red flags, which she calls red flags, things that the Azov entities allegedly knew that should have tipped them off that this crime was happening. So she says, unlike during prior Legs of the Eagles tour, plaintiff was put in the same hotel as Dolan's band, which was one of the bands on the tour, as opposed to the Eagles, and that Dolan paid for her trip to California, and that she went to the forum every day and was provided with a room and was paid for that, but that she didn't provide as many massages as she expected. Nobody, no reasonable person knowing those facts would walk into a U.S. attorney's office, for example, and say, I think there is sex trafficking going on, because those facts are not red flags of anything. They're just facts that describe a masseuse being hired for a rock and roll tour. Well, she has two other facts that you've not listed, and that is that your clients knew that Dolan was engaging in sexual conduct with her and that she was specifically asked to come to L.A. at Dolan's request. That's who wanted her, not the Eagles. Oh, yeah. I thought – the second one I thought I said, that's true. And so if you think that Mr. Dolan – I mean, she was the masseuse on the last Leg of the tour. The Azov entities could have known that Mr. Dolan wanted her on this Leg of the tour. That doesn't even come close to suggesting that there was sex trafficking going on. As to the allegation that my clients knew that there was a sexual relationship, two points. First of all, they don't allege that. They allege that the – that Mr. Dolan told members of his band that there was a sexual relationship, which I'm not sure how that touches my clients. But even if you give that one to them, knowing that there was a sexual relationship, again, is not knowing or even being put on constructive notice that there was sex trafficking, right? If you look at the cases – I agree with you that if you don't have sex trafficking, then this isn't going to come together. But I understood your argument to be even if they could allege enough to establish sex trafficking, it still wouldn't work. And that's where I'm not sure I buy it. Right. That is our argument. And the reason we say that is if you look at the cases that have allowed claims like this to go past the pleadings, for example, the hotel cases where people rent hotel rooms for an inordinate period of time, there are all sorts of different people going in and out. There are used condoms and drug paraphernalia found in the rooms. Women are seen walking out of the rooms looking haggard and beat up. Those cases get past the pleadings because somebody knowing those facts should be on notice that there is something like sex trafficking going on. But if all you know is that Mr. Dolan wanted to hire a masseuse that he had worked with before to be on the tour and that she was given a room at the forum to provide massages, provided less than she expected and was paid for doing so, that would not – and even if they knew that there was a sexual relationship, which we don't think they alleged, I don't think anybody, any reasonable person would be put on notice that a crime was happening, that there was coercion in exchange for sex acts happening. And that's the thrust of our argument. And then there's the agency point, as I think I'm almost out of time, but the agency point is basically that their allegation is that if anything, Mr. Dolan controlled the Azov entities. You can look at, for example, paragraph 39 in their complaint where they say Dolan could control the Azov entities' business decisions about the Eagles tour. So if anything, the allegations would show that Dolan was the principal. There's no allegation, no plausible allegation at all suggesting that Dolan was an agent of the Azov entities. Anything further? That's it, Your Honor. Thank you. Thank you for your argument. Thank you, Your Honors. I'd like to start with a quote from U.S. v. Mains, which is a Fourth Circuit case, that makes it clear that fraud does not need to cause the Commercial Sex Act. The crime of sex trafficking is complete when the defendant recruits, entices, harbors, et cetera, the victim with knowledge that the prohibited means will be used in the future to cause them to engage in the Commercial Sex Act. That is what happened here. Dolan and Azov jointly used fraud, knowing that it would be used to try to induce her in a sex act. The promises of I'm going to give you a slot at MSG, that was his intent, was that he was planning to use those means, those illicit means, to induce a sex act for which she thought there was value. That's what the team… Where in the complaint do you allege what you just said? That where do we allege that… In other words, you basically are saying this is obvious and this is what happened. I'm not seeing what you're saying in the complaint. What paragraphs are you referring to that in fact allege what you just said? So the Azov entities at paragraph 50 say, I need you out on this tour. They know that it's coming from JD. They know that fraud is being used. There is the knowledge of the illicit means. Wait, paragraph 50 is knowledge? Paragraph 50, Azov says, I need you at the show, knowing that it's on the JD credit card. He knows that there's fraud being used. But that doesn't say that. I mean, it says about the credit card, but I mean, you're implying so many things that need to be stated with specificity. That troubles me. I don't see how you get there. So it's a reasonable inference to be drawn based on the totality of the circumstances here, which is that they know that all of these red flags, the fact that she's staying somewhere else, that she's not actually performing things, that it's going on the JD credit card, those are meaningful red flags that they should say, why are we lying about this? Why do we need a deceit to get her out to L.A.? Like, why can't you just say, you know, James Dolan wants to have sex with you out in L.A. He's going to pay for it. Like, why is there a deceit at all about what her reason for going out there is? Because they need a deceit to induce her to come out to engage in the commercial sex acts. You're over your time. Could you please wrap up? Yes. That is all I have, unless there are more questions. I don't think there are. Thank you for your argument, all three of you. We'll take that case under advisement and go to the next case on the calendar.
judges: SMITH, CHRISTEN, FORREST